UNITED STATES of America,
Plaintiff–Appellee,

v.

Jorge ESCOBAR, Defendant–Appellant.

No. 91–4203.

United States Court of Appeals,
Sixth Circuit.

Submitted Sept. 29, 1992.

Decided April 23, 1993.

Kenneth S. McHargh, Asst. U.S. Atty. (briefed), Cleveland, OH, for U.S.

Richard A. Damiani (briefed), Cleveland, OH, for Jorge Escobar.

Before: NELSON and SILER, Circuit Judges; and MILES, Senior District Judge.*

MILES, Senior District Judge.

Defendant-appellant Jorge Escobar appeals his sentence imposed pursuant to a guilty plea for participation in a continuing criminal enterprise in violation of 21 U.S.C. § 848, conspiracy to distribute and to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846, possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A), and money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i). Escobar contends that in imposing sentence under the United States Sentencing Guidelines, the district court committed error by including two prior State of Ohio sentences for cocaine possession in the computation of his criminal history score,

---

* The Honorable Wendell A. Miles, Senior United States District Judge for the Western District of     Michigan, sitting by designation.

because the conduct which formed the basis for the Ohio sentences was part of the continuing criminal enterprise on which his federal sentence is based. Finding no error in the district court's inclusion of these sentences in the criminal history score, we affirm.

## I

In February, 1991, a federal grand jury returned a 46–count indictment charging Jorge Escobar (also known as "Larry Green") and nine other defendants with numerous violations of federal law in connection with a cocaine trafficking operation. Escobar himself was named in 19 separate counts of the indictment. The charges against him included organizing and supervising a continuing criminal enterprise, in violation of 21 U.S.C. § 848; conspiracy to distribute and to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846; several counts of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1); several counts of use of a telephone to facilitate a felony, in violation of 21 U.S.C. § 843(b); and three counts of money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i), 1957 and 2.

The continuing criminal enterprise and conspiracy charged in the indictment were alleged to have operated from 1988 until January, 1991. Numerous overt acts were included in the conspiracy charge, but for our purposes, only a limited number of them are relevant. More specifically, the indictment charged that on January 14, 1991, in furtherance of the conspiracy, Escobar and co-defendant Jair Mosquera attempted to fly from Hopkins Airport in Cleveland, Ohio to New York City, in possession of approximately 2.5 kilos of cocaine and approximately $66,000 in cash. After purchasing their airline tickets, Escobar and Mosquera were arrested at the airport by state authorities, who seized two suitcases the men had been carrying. One of the suitcases contained the $66,000 in U.S. currency, while the other contained the 2.5 kilograms of cocaine. State authorities also seized an additional .58 grams of cocaine,

contained within a folded dollar bill found on Escobar's person at the time of his arrest.

Nine days later, on January 23, 1991, Escobar was indicted in the Cuyahoga County Common Pleas Court. The four count indictment included one count charging Escobar with possession of the .58 grams of cocaine found inside the dollar bill on January 14, 1991, and one count charging him with possession of another small amount of cocaine on November 16, 1990. Two other counts charged Escobar with possession of criminal tools (specifically, money) on these same dates. While on release pending the resolution of these state charges, Escobar continued his drug activity, not knowing that he was also being investigated by federal authorities. Escobar was indicted by a federal grand jury on February 27, 1991.

On September 10, 1991, a jury trial began for Escobar and one other co-defendant in the present case. On the fourth day of trial, Escobar entered a plea of guilty to five counts of the indictment, including, notably, the continuing criminal enterprise and conspiracy charges, two cocaine possession charges, and one money laundering charge.

On October 3, 1991, Escobar also pled guilty in Ohio court to the two charges of cocaine possession. He was sentenced to a term of 18 months imprisonment on each of these counts, to run concurrent with the anticipated federal sentence.

On December 3, 1991, the district court sentenced Escobar in this case. The presentence report calculated Escobar's guideline range of imprisonment at between 324 and 405 months, based on an offense level of 40 and a criminal history category of II. United States Sentencing Commission, *Guidelines Manual* (hereinafter "U.S.S.G."), Ch. 5, Part A (Nov.1991) (Sentencing Table). The presentence report's calculation of Escobar's criminal history was based solely on the two Ohio convictions for cocaine possession, for which he was credited with a criminal history score of three points under U.S.S.G. § 4A1.1(a).[1] At the time of sentencing, defense counsel objected to the inclusion of the

---

1. In computing the defendant's criminal history category, U.S.S.G. § 4A1.1(a) requires the addi-

tion of three points for each prior sentence of imprisonment exceeding 13 months.

Ohio convictions, contending that those convictions involved conduct which formed part of the federal charges. Under U.S.S.G. § 4B1.2(a), a "prior sentence" for purposes of determining a defendant's criminal history score is defined as "any sentence previously imposed upon adjudication of guilt ... *for conduct not part of the instant offense.*" (emphasis supplied). The district court, however, found that Escobar's Ohio sentence was not for conduct which was part of the instant offense and overruled the objection, sentencing Escobar to a term of 324 months imprisonment, with a supervised release term of five years. This appeal followed.

## II

██ Escobar challenges the district court's inclusion of the Ohio sentences in his criminal history score.[2] We apply a clearly erroneous standard in reviewing factual findings made by the district court in imposing Guideline sentences. *United States v. Garner,* 940 F.2d 172, 174 (6th Cir.1991); *see also United States v. Kappes,* 936 F.2d 227, 231 (6th Cir.1991) (clearly erroneous standard applied to review of district court's conclusion that two prior offenses arose out of the same course of conduct under relevant conduct provision of the Guidelines). In addition, we give due deference to the district court's application of the Guidelines to those facts. *See United States v. Williams,* 952 F.2d 1504, 1517 (6th Cir.1991).

██ The district court found that the charges to which Escobar pled guilty in state court were not for the same conduct to which he pled guilty in this case. However, Escobar contends that because his Ohio convictions were for conduct which forms part of the federal offenses to which he pled guilty, the district court erred in using the Ohio sentence to enhance his criminal history score. Escobar argues that there appears to be no dispute that his Ohio convictions involved conduct constituting part of the continuing criminal enterprise for which he was

sentenced in this case. To the contrary, the United States has disputed this characterization, contending that Escobar's possession of small amounts of cocaine on November 16, 1990 and January 14, 1991 was not charged in the federal indictment. Therefore, the question which we must answer is whether Escobar's state convictions were for "conduct not part of the instant offense" within the meaning of § 4A1.2(a)(1).

In *United States v. Beddow,* 957 F.2d 1330 (6th Cir.1992), a panel of this Circuit addressed the meaning of the phrase "conduct not part of the instant offense." Following the Tenth Circuit in *United States v. Banashefski,* 928 F.2d 349 (10th Cir.1991), the court held that

> the appropriate inquiry is whether the 'prior sentence' and the present offense involve conduct that is severable into two distinct offenses. This is necessarily a fact-specific inquiry that involves more than just a consideration of the elements of the two offenses. *Banashefski,* 928 F.2d at 352 n. 4. Factors such as the temporal and geographical proximity of the two offenses, common victims, and a common criminal plan or intent also must be considered.

*Beddow,* 957 F.2d at 1338.

Following the inquiry directed by *Beddow,* we find no basis in this case for disagreement with the district court's conclusion that Escobar's sentence for possession of a small amount of cocaine on November 16, 1990 was for "conduct not part of the instant offense" and thus includable within the criminal history score. Having scoured the extensive indictment in this case, we find no reference to any criminal conduct, cocaine possession or otherwise, occurring on November 16, 1990. Escobar's possession of cocaine on that date is simply not charged in the federal indictment, and the commission of this act need not have been proven as an element of any of the offenses therein to which he pled guilty.

---

2. Initially, we note that although Escobar's Ohio convictions were for offenses committed during the course of the conspiracy and continuing criminal enterprise charged in the federal indictment, the Ohio sentences are nonetheless considered "prior sentences." In determining whether

a sentence is "prior," this Circuit has held that it is the chronology of sentencing, rather than the chronology of the commission of the crimes, which is controlling. U.S.S.G. § 4A1.2, comment. (n. 1); *United States v. Beddow,* 957 F.2d 1330, 1337 (6th Cir.1992).

Moreover, although the continuing criminal enterprise and conspiracy charged in Counts One and Two of the indictment are alleged to have existed from 1988 until January 1991, no specific violations or overt acts forming the basis for those offenses are charged in the indictment to have been committed on the date of November 16, 1990. We can think of no justification for concluding that *any* cocaine possession by Escobar during the three-year time span of the criminal enterprise must automatically be considered as having been committed by him as part of or in furtherance of his criminal enterprise. Escobar's supervision of a criminal enterprise and conspiracy, formed for the purpose of distributing cocaine to others, is a distinct offense, severable from his possession of a small amount of cocaine, ostensibly for personal use, on one particular date not charged in the federal indictment. Therefore, we hold that Escobar's 18-month state sentence for possession of cocaine on November 16, 1990 was properly included as a "prior sentence" in his criminal history score pursuant to §§ 4A1.1(a) and 4A1.2(a).[3]

Having concluded that the district court did not err by including Escobar's state sentence for cocaine possession on November 16, 1990 in computing his criminal history score, we are still left with his other state sentence for cocaine possession on January 14, 1991. In contrast to Escobar's state sentence for cocaine possession on the former date, the federal indictment does charge Escobar with

commission of acts on the latter date—the events involving Escobar's attempted flight from Cleveland to New York City with Mosquera, in possession of two suitcases containing 2.5 kilos of cocaine and $66,000 in cash. Although the federal indictment does not specifically charge Escobar with possession of the .58 grams of cocaine found folded in a dollar bill on his person on that date, it is less clear whether his possession of two different amounts of cocaine at the same time and place constitutes severable offenses.

We find it unnecessary to decide whether Escobar's actions on January 14, 1991 involve conduct severable into distinct offenses. As we read the Ohio judgment, it imposes concurrent, 18-month sentences for each of the two convictions.[4] Accordingly, whether or not Escobar's possession of .58 grams of cocaine on January 14, 1991 is considered as part of his federal offense, his state sentence of 18 months for cocaine possession on November 16, 1990 is sufficient to place him in criminal history category II because, as we have concluded, the district court properly credited Escobar with three points for this prior sentence under U.S.S.G. § 4A1.1(a). See U.S.S.G., Ch. 5, Part A (Sentencing Table). Because the sentence of 324 months which the district court imposed in this case is within the Guidelines range of 324 to 405 months for a category II offender with an offense level of 40, we find no error—certainly none prejudicial to Escobar—in the district court's application of the Guidelines.[5]

**3.** Escobar cites to dicta in *United States v. Belton,* 890 F.2d 9, 11 (7th Cir.1989) in support of his argument that his state convictions for cocaine possession may not be used to determine his criminal history score for purposes of sentencing on continuing criminal enterprise and conspiracy charges under Part A of Chapter 4 of the Sentencing Guidelines. *Belton* involved application of the "career offender" provisions contained in Part B of Chapter 4, not Part A. Apart from this distinction, however, we also fail to see the relevance of that case, because in contrast to the instant case, the criminal conduct from which the state offense arose in *Belton* was apparently included as part of the charged federal conspiracy. At one point in that case, the court in *Belton* noted that the state conviction at issue "punished conduct that took place after the offense underlying the current conviction (the Milwaukee conspiracy) had begun *and that indeed was part of that offense.*" (emphasis supplied). 890 F.2d at 10.

**4.** The journal entry of the judgment and sentence imposed in the Court of Common Pleas of Cuyahoga County, Ohio reads in pertinent part as follows:

It is therefore, ordered and adjudged by the court that said defendant, Larry Green [Escobar's alias] is sentenced to Lorain Correctional Institution, for a term (18) eighteen months on each count (1) one and (3) three. Counts to run concurrent to defendant's federal sentence....

**5.** We note that the United States has not taken the position that Escobar should receive six points of credit, rather than only three, for the two concurrent state sentences pursuant to U.S.S.G. § 4A1.2(a)(2), which provides that "[p]rior sentences imposed in unrelated cases are to be counted separately." Therefore, we have no occasion to consider whether application of § 4A1.2(a)(2) would result in Escobar's

*III*

For the foregoing reasons, we **AFFIRM** the sentence imposed.

placement in criminal history category III. *See* U.S.S.G., Ch. 5, Part A (Sentencing Table, establishing range of 360 months to life for category III offender, with an offense level 40).