**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 7 1999**

**PATRICK FISHER**
**Clerk**

<u>PUBLISH</u>

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

       Plaintiff-Appellee,

v.

       No. 98-3006

ALFREDO TORRES,

       Defendant-Appellant.

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 97-CR-20034-01-EEO)**
_____

Submitted on the briefs:[*]

Cenobio Lozano, Jr., Harrisonville, Missouri, for Defendant-Appellant.

Jackie N. Williams, United States Attorney for the District of Kansas, and Leon Patton, Assistant U. S. Attorney, Kansas City, Kansas, for Plaintiff-Appellee.
_____

Before **BRORBY**, **McKAY**, and **EBEL**, Circuit Judges.
_____

    [*]After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. <u>See</u> Fed. R. App. P. 34(f) and 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

**McKAY**, Circuit Judge.

_____

Appellant-Defendant, Alfredo Torres, challenges his sentence on conviction of conspiracy to distribute marijuana and cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1).  Mr. Torres contends that the district court misapplied certain provisions of the United States Sentencing Guidelines to improperly include three prior sentences in determining his criminal history category.  We exercise jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

Mr. Torres, along with eleven other co-conspirators, operated a drug importation and distribution enterprise in the greater Kansas City area from 1994 until June 1996.  The government indicted Mr. Torres for multiple drug-related offenses.  He subsequently pleaded guilty to the charge of conspiracy to distribute marijuana and cocaine in violation of 21 U.S.C. § 846.  The presentence report established Mr. Torres' base offense level for the conspiracy conviction at 32.  In addition, the report recommended a four-level increase under United States Sentencing Guidelines § 3B.1.1(a) because of Mr. Torres' role as leader or organizer of a criminal activity involving five or more participants but allowed a three-level decrease for acceptance of responsibility under § 3E1.1(b).  These

adjustments resulted in a final recommended total offense level of 33.

The presentence report also recommended the assessment of nine criminal history points against Mr. Torres, placing him in criminal history category IV. The report calculated Mr. Torres' criminal history points as follows: (1) one point for a thirty-day sentence imposed in 1992 for violating the terms of probation imposed in a 1985 juvenile conviction for driving while intoxicated; (2) two points for a ninety-day sentence imposed in 1986 for driving while intoxicated; (3) two points for a 132-day sentence for misdemeanor possession of marijuana in 1994; (4) one point for a two-year probationary sentence for felony possession of marijuana in 1995; (5) two points for committing the present offense while on supervised release and probation for other crimes; and (6) one point for committing the present offense less than two years after release from another term of imprisonment. Adopting the recommended total offense level of 33 and a criminal history category of IV, the district court sentenced Mr. Torres to 188 months in prison with a five-year term of supervised release–the minimum allowable sentence within the guideline range. See U.S.S.G. Ch. 5, Pt. A.

Mr. Torres does not contest his conviction or the calculation of his total offense level. Instead, he raises two issues challenging the district court's criminal history assessment. First, Mr. Torres cites guideline provisions

explicitly disallowing the double-counting that results from assessing criminal history points for prior sentences which are part of the present offense or that were already considered in setting the base offense level. Based on these rules, he contends that the court should not have considered his 1994 and 1995 sentences for possession of marijuana because they form part of the instant offense of conspiracy to distribute drugs and are not separate, unrelated prior sentences. In his second claim, Mr. Torres contends that the court improperly assessed one criminal history point against him for the thirty-day sentence he served in 1992. He argues that if the court had properly interpreted the applicable guideline sections, it would have used the date of his "original sentence" for the juvenile offense in 1985 as instructed in § 4A1.2(k)(2)(B)(iii) instead of the "date of [his] last release from confinement," as instructed in § 4A1.2(k)(2)(B)(ii), and thus would have decided that the prior sentence was beyond the five-year limitation for including the prior sentence in assessing his criminal history.

We first address Mr. Torres' claim of error with regard to the district court's assignment of three criminal history points for his 1994 and 1995 misdemeanor and felony marijuana possession sentences. A challenge to the district court's determination of whether the two prior offenses were part of the instant offense is a factual determination which we review for clear error. See

-4-

United States v. Hopson, 18 F.3d 465, 467 (7th Cir. 1994) (reviewing for clear error the issue of whether district court correctly determined that prior state misdemeanor drug possession conviction was not related to present conspiracy charge); United States v. Beddow, 957 F.2d 1330, 1338 (6th Cir. 1992) (stating that the determination of whether a prior sentence and present offense are distinct or severable is necessarily a fact-specific inquiry reviewed for clear error). We review de novo the application of the Sentencing Guidelines. See United States v. Farnsworth, 92 F.3d 1001, 1007 (10th Cir. 1996).

Under the Sentencing Guidelines, criminal history points are given for each "prior sentence," which is defined as "any sentence previously imposed upon adjudication of guilt . . . for conduct not part of the instant offense." U.S.S.G. § 4A1.2(a)(1). The commentary accompanying § 4A1.2 provides that "[c]onduct that is part of the instant offense means conduct that is relevant conduct to the instant offense under the provisions of § 1B1.3 (Relevant Conduct)." Id. § 4A1.2, comment. (n.1). Thus, a prior sentence counts as criminal history if it does *not* involve relevant conduct under § 1B1.3. In cases of jointly undertaken criminal activity such as the conspiracy charged in this instance, "relevant conduct" is defined to include both "acts and omissions committed . . . by the defendant . . . and . . . all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the

commission of . . . [and] in preparation for" the offense of conviction. Id. § 1B1.3(a).

Courts have taken different approaches in determining whether a prior sentence constitutes relevant conduct for purposes of calculating criminal history. One approach asks whether the prior sentence was actually taken into account by the sentencing court in determining the total offense level. See, e.g., United States v. Crosson, 166 F.3d 1210, 1998 WL 887012, at **1-**2 (4th Cir. 1998) (Table) (holding that trial court did not err in assigning a criminal history point for the prior sentence because it properly determined that the prior sentence "was not accounted for in computing [defendant's] offense level for the instant offense"); United States v. Oser, 107 F.3d 1080, 1086, 1088 (3d Cir.) (holding that because district court did not take prior offense into account in determining defendant's base offense level for instant offense, prior sentence was not relevant conduct under criminal history assessment), cert. denied, __ U.S. __ , 118 S. Ct. 206 (1997). In a similar vein, this court held that a district court did not commit plain error in counting a prior conviction as criminal history when the court did not include the conviction as relevant conduct in its calculation of the offense level. See United States v. Williamson, 53 F.3d 1500, 1526 (10th Cir. 1995) (relying on fact that only mention of the conviction was in criminal history section of the presentence report). Except in cases such as Williamson, which

limit review to a plain error analysis, we find this approach to be flawed because it does not allow the appellate court to review the correctness of the underlying determination that the prior offense was not relevant conduct.

Other courts have approached this criminal history determination differently. These courts have simply analyzed whether the prior sentence constituted relevant conduct without inquiring whether the sentencing court took the sentence into account in determining the total offense level. In other words, these courts make an independent evaluation of whether the prior sentence constituted relevant conduct based on factors such as the similarity, temporal proximity, and regularity of the indicted offense and the prior offense. See, e.g., United States v. Walling, 936 F.2d 469, 471 (10th Cir. 1991) (reviewing district court's finding that prior conviction was not part of the instant offense by comparing prior and instant offenses without reference to calculation of base offense level); United States v. Phillips, 129 F.3d 118, 1997 WL 693578, at **2 (4th Cir. 1997) (Table) (reviewing and affirming district court determination that a prior conviction for distribution of crack cocaine was not relevant conduct for criminal history purposes without reference to offense level calculation).

Because this court has utilized both of these approaches, albeit under different standards of review, and because neither of the approaches seems sufficiently disciplined, standing alone, to prevent manipulation of the Sentencing

Guidelines, we think that combining the two approaches provides a more appropriate analytic framework. Without explicitly so stating, this court recently utilized such a hybrid approach in United States v. Wiseman, __ F.3d __ , 1999 WL 190553, at *21 (10th Cir. 1999) (affirming district court's criminal history calculation because presentence report clearly indicated that two prior convictions "were not treated as part of the instant offenses, either as 'relevant conduct' or in any other way," and because "differences in time, place, and victims made each of these robberies clearly discrete events"). In an effort to guide future cases, and to resolve this case, we follow the analysis set out in full here.

As a threshold matter, we must first examine whether the district court took the prior sentence into account in determining the base offense level. If the district court did take the prior sentence into account in calculating the offense level, then it is clear that to prevent double counting the court cannot use that same sentence in its criminal history calculation. See U.S.S.G. § 4A1.2(a)(1) & comment. (n.1). However, in a case like this one, where the record shows that the court did not take the prior sentence into account for its base offense level calculation but instead used it for criminal history purposes, a second step of analysis is necessary. We also must review the court's underlying finding that the prior sentence was not part of the instant offense, i.e., that it was not relevant conduct. See Walling, 936 F.3d at 471. A correct determination of whether the

prior sentence constituted relevant conduct is an essential predicate to the criminal history assessment.  See U.S.S.G. § 4A1.2, comment. (n.1).

To determine whether a prior offense is conduct related to the instant offense, courts generally examine several factors, including the similarity, temporal proximity, and regularity of the instant offense and the prior sentence. See, e.g., Walling, 936 F.3d at 471 (examining temporal proximity and nature and substance of offenses and whether prior offense was consolidated with instant offense for trial or sentencing); Hopson, 18 F.3d at 468 (evaluating factors such as the nature of the offenses, evidence showing different amounts of cocaine used and charged in the offenses, the content of the indictment, and whether the government had intended to present evidence concerning the prior conviction).

In this case, the record does not answer whether Mr. Torres' two prior marijuana convictions were conduct relevant to the instant conspiracy offense. The government offered no evidence on this question.  At the sentencing hearing, the government asserted that "this is not a situation where those [prior] drug offenses *charged* [Mr. Torres] with being involved in a conspiracy with one or more of the key conspirators of this case during the time period we have charged him with."  Appellant's App. at 15 (emphasis added).  However, the mere claim that Mr. Torres' two prior offenses did not involve *charges* of a *conspiracy* with the key conspirators of this case does not shed any light on whether the

*underlying "acts and omissions . . .* committed by the defendant" were relevant to the instant charged conspiracy. U.S.S.G. § 1B1.3(a)(1)(A). In fact, several courts, including this one, have found relevant conduct under § 1B1.3(a)(1) in situations where the prior offense did not involve any conspirator other than the defendant. See, e.g., United States v. Ruiz-Castro, 92 F.3d 1519, 1537 (10th Cir. 1996) (concluding that district court did not err in finding pre-conspiracy sales of cocaine to be relevant conduct because they involved similar amounts of cocaine, occurred at defendant's or buyer's house, and were regular sales, even though the sales were to an individual not charged in the conspiracy and did not involve any other conspirators); United States v. Robles, 132 F.3d 34, 1997 WL 735345, at *2 (6th Cir. 1997) (Table) (holding that district court did not err in concluding that sale of drugs during seven years prior to charged conspiracy was relevant conduct because sales were regular and involved identical conduct and common accomplices but not charged conspirators); United States v. Stilley, 108 F.3d 1374, 1997 WL 107741, at **1 (4th Cir. 1997) (Table) (affirming finding that prior drug transactions conducted between 1992 and 1994 were part of same course of conduct as conspiracy occurring in 1995 even though other member of conspiracy was not involved in prior transactions). But see United States v. Brooks, 114 F.3d 106, 107-08 (7th Cir.) (concluding that prior sentence for distribution of cocaine was not relevant to conspiracy charge and was countable

for criminal history purposes because prior sale did not involve conspirators and was not temporally proximate, even though evidence showed it was same sort of conduct charged in indictment and distribution of cocaine was continuous throughout period of conspiracy), cert. denied, __ U.S. __ , 118 S. Ct. 115 (1997). Additionally, while the government acknowledged that the prior offenses "were done during the same time period [and that] it was the same type of criminal conduct" as the instant conspiracy, it merely made the negative assertion that "[t]here is no evidence before this court that those convictions arose out of this conspiracy." Appellant's App. at 15. Finally, although the government did not so concede, the record also shows that the offenses were within the geographic area of the charged conspiracy.

For its part, the district court found that "there is no evidence from which the court could find by a preponderance of the evidence at least that these [prior] convictions arose out of th[e] conspiracy," id. at 19, and reasoned that "[b]oth convictions predated the date of the first overt act charged in this case," and that "[n]one of the drugs involved in these two [prior] cases was considered as relevant conduct in computing the defendant's base offense level." R., Supp. Vol. I at ¶ 156. However, we do not believe that the district court's reasoning was probative of whether Mr. Torres' two prior sentences were conduct relevant to the instant conspiracy. Although the prior offenses, both of which occurred in 1994,

predate the first overt act charged in the instant conspiracy by two years, the prior offenses nonetheless occurred within the time period of the charged conspiracy, which was charged to have run from 1994 to 1997. The bare fact that the probation officer who prepared the presentence report *chose* not to treat the prior offenses as relevant conduct for calculating the criminal offense level provides no evidentiary support for the court's conclusion that those offenses were *not relevant* to the instant conspiracy. In fact, the only evidence which bears on the issue of relevant conduct, i.e., the temporal proximity, geographic scope, and similar conduct of the prior offenses and the instant conspiracy offense, points in the direction that it was relevant conduct.

However, because we do not think that the record answers whether Mr. Torres' two prior sentences were conduct relevant to the instant conspiracy, we are faced with a question that has not before been explicitly answered by this court, namely, who bears the burden of proving whether the conduct underlying Mr. Torres' two prior convictions was relevant to the instant conspiracy offense. For purposes of assessing criminal history, does the government have to prove that the prior offenses were *not relevant* to the instant conspiracy (thereby including them in criminal history)? Or must the defendant prove that the prior offenses were *relevant* to the instant conspiracy (thereby excluding them from criminal history)? If the government has the burden of proof, then the defendant

wins. If the defendant has the burden, then the government wins.

Facially, it is at least feasible to assume that the earlier marijuana possession offenses were relevant to the instant offense of conspiracy to distribute marijuana and cocaine because they (1) were within the time frame charged for the instant conspiracy; (2) were within the geographic scope of the instant conspiracy; and (3) involved the same product and activity as the instant conspiracy.[1] However, such an overlap by itself does not establish *as a matter of law* that the prior offenses and instant conspiracy were related. Compare United States v. McClelland, 141 F.3d 967, 973-74 (10th Cir. 1998) (interpreting U.S.S.G. § 1B1.3(a)(2) "to mean that if the conduct is sufficiently similar and within the same temporal proximity, it may be considered relevant for purposes of determining the guideline range" and affirming finding that prior incidents constituted relevant conduct because conduct was sufficiently similar to and within same temporal proximity as conduct charged in conspiracy), with Hopson, 18 F.3d at 469 ("[W]e are not willing to conclude that two offenses are related merely because they occurred during the same time period and involved the same substance."). Otherwise, a sentencing court would never be able to count as criminal history drug convictions involving possession for personal use if such possession occurred within the time frame and geographic scope of a conspiracy

---

[1]Indeed, this was the position Mr. Torres took at sentencing.

-13-

to distribute the same type of drugs.

Nevertheless, three compelling reasons persuade us that the burden of proof is on the government. First, it is generally "the government which [has] the burden of showing whatever facts are needed to justify adding additional criminal history points." United States v. Nicholas, 133 F.3d 133, 136 (1st Cir. 1998) (quotations omitted); cf. United States v. Hill, 53 F.3d 1151, 1153 (10th Cir. 1995) (en banc) ("The government must prove a sentence enhancement by the preponderance of the evidence."); United States v. Kirk, 894 F.2d 1162, 1164 (10th Cir. 1990) ("The government shall bear the burden of proof for sentence increases and the defendant shall bear the burden of proof for sentence decreases."). While we are unaware of any case that explicitly assigns the burden of proving the issue of relevant conduct for criminal history purposes, Hopson implicitly places the burden, at least initially, on the government. In Hopson, the Seventh Circuit noted the defendant's argument that, "because the government did not establish by a preponderance of the evidence that his prior misdemeanor conviction was unrelated to the conspiracy charge, the district court violated his due process rights in assigning the extra guideline point" for a prior cocaine possession offense which occurred within the time frame of his conspiracy to distribute cocaine. Hopson, 18 F.3d at 467. In apparent agreement with the defendant, the Seventh Circuit then immediately stated that, "[u]nder the

-14-

Sentencing Guidelines, due process is satisfied when information relied upon during sentencing is proven by the preponderance of the evidence." Id. After discussing the evidence presented by the government, the court then observed that the defendant could have rebutted the government's position "once the government presented its view of the evidence," and it rejected the defendant's claim because he failed to rebut the evidence presented by the government. Id. at 469. Thus, although Hopson does not expressly state that the government has the burden of proving that prior convictions are not relevant for criminal history purposes, its analysis assumed such a framework. But see United States v. Randolph, 64 F.3d 670, 1995 WL 495190, at **1-**2 (10th Cir. 1995) (Table) (implicitly placing burden on defendant to present evidence showing prior offenses were relevant conduct for purposes of assessing criminal history).

Second, prior convictions count as criminal history only if their underlying conduct was not relevant to the instant offense under U.S.S.G. § 1B1.3. See U.S.S.G. § 4A1.2, comment. (n.1). The government has always shouldered the burden of proving relevant conduct asserted to increase a defendant's *base offense level*. See United States v. Richards, 27 F.3d 465, 468 (10th Cir. 1994). This allocation of the burden of proof persuades us to require the government to disprove the relevancy of prior conduct asserted to increase a defendant's *criminal history score*. Although in the latter case the required proof is that

conduct is *not* relevant, in both scenarios the government seeks to use the *issue* of relevant conduct, through the use of uncharged conduct, to expose a defendant to higher sentences under the Guidelines. See United States v. Matthews, 942 F.2d 779, 784 (10th Cir. 1991) ("The government bears the burden of proving uncharged conduct by a preponderance of the evidence."). Placing the burden of proof on the government in both scenarios imposes some discipline on how the government determines that a defendant's prior offense should be counted under the Guidelines, thus preventing arbitrary and inconsistent manipulation of the Guidelines to obtain a higher sentence.

Third, as a matter of policy, it seems that the government is at least as well-positioned to come forward with the required proof as the defendant. After all, the government chooses the scope of the conspiracy with which to charge the defendant, and it should be prepared to prove what conduct is relevant to its charged conspiracy. The government can always narrow the charge of conspiracy to reduce its burden.

We recognize that there are also persuasive reasons for putting the burden of proof on the defendant. For one, the defendant is in the best position to know the scope of the actual conspiracy. For another, this court usually only requires the government to prove the *existence* of a prior conviction by a preponderance of the evidence in order for it to be considered a prior conviction for purposes of

-16-

calculating criminal history.  See United States v. Simpson, 94 F.3d 1373, 1381 (10th Cir. 1996) ("The government must establish the fact of a prior conviction by a preponderance of the evidence.").  The defendant then has the burden of proving, by a preponderance of the evidence, that the prior conviction should not be used to calculate criminal history because it was constitutionally infirm.  See United States v. Windle, 74 F.3d 997, 1001 (10th Cir. 1996).

Ultimately, however, the reasons for putting the burden on the defendant are not compelling.  First, although the defendant would have better knowledge of the scope of the *actual* conspiracy, the government has control over the scope of the *charged* conspiracy and should know what it encompasses.  Second, the situation where the defendant has to prove the constitutional infirmity of his prior conviction to avoid having it counted as criminal history is dissimilar to the instant case.  There, the defendant is in the better position of proof because he was present during the prior conviction and should know what constitutional infirmities to assert.  Placing the burden on the government in that context would saddle it with an open-ended obligation with no clear target.  Here, in contrast, the government can determine from the prior court records exactly what conduct was involved in those earlier convictions, and the government has complete power to define the scope of the conspiracy with which to charge the defendant.  It therefore is reasonable to impose upon the government the burden of proving that

the conspiracy it chooses to charge does *not relate* to conduct underlying prior convictions which the government seeks to include in the defendant's criminal history.

In summary, at least where the scope of the charged conspiracy covers (1) a time frame, (2) a geographic area, and (3) a subject matter or purpose broad enough to include prior convictions, we hold that the government bears the burden of proving by a preponderance of the evidence that the prior convictions were not relevant conduct and hence not part of the charged conspiracy. Only then can the government utilize those prior convictions to increase the defendant's criminal history score.

Because the government has failed to meet that burden here, the district court erroneously found that Mr. Torres' two prior convictions were not part of the instant offense. We accordingly reverse and remand for resentencing with instructions to the district court to reduce Mr. Torres' criminal history points to six, which places him in criminal history category III. We point out that this result does not mean that the prior sentences are *a fortiori* relevant conduct; we conclude simply that the government failed in its burden of proof. However, our reversal and remand for resentencing does not invite an open season for the government to make the record that it failed to make in the first instance.

In his second issue raised on appeal, Mr. Torres challenges the court's one-point assessment for his thirty-day sentence in 1992. In support of his argument, Mr. Torres urges us to read §§ 4A1.1, 4A1.2(d) and 4A1.2(k)(2)(B) in concert and imply from their terms an interrelationship between § 4A1.2(k)(2)(B) subsections (ii) and (iii) and the referenced sections of § 4A1.2(d). Mr. Torres argues that § 4A1.2(k)(2)(B)(ii)–the guideline relied upon by the court–does not apply to his thirty-day sentence from 1992 because it specifically references § 4A1.2(d)(2)(A), which limits the assessment of criminal history points to an "adult or juvenile sentence to confinement of at least sixty days." U.S.S.G. § 4A1.2(d)(2)(A). Mr. Torres reasons that because § 4A1.2(k)(2)(B)(ii) is so related to § 4A1.2(d)(2)(A), it must not apply to his thirty-day sentence, and the court should have used the date of his original juvenile sentence in 1985 as instructed in § 4A1.2(k)(2)(B)(iii) for the purpose of deciding whether to assess criminal history points for the juvenile offense. Applying this interpretation, Mr. Torres contends that his original 1985 conviction does not fall within five years of the "commencement of the instant offense," id. § 4A1.2(d)(2)(A), and consequently the district court inappropriately counted the conviction as part of his criminal history score. See id. § 4A1.2(e)(3) ("Any prior sentence not within the time periods specified . . . is not counted.").

Mr. Torres' argument raises valid Guideline application questions.

Nevertheless, because we have concluded that the court incorrectly included three criminal history points for Mr. Torres' prior sentences for marijuana possession and because we remand for resentencing applying criminal history category III, we find it unnecessary to address this claim. Assuming that Mr. Torres prevailed on this second issue, the resulting one-point deduction from his criminal history would do nothing to change his criminal history category III status. See id. at Ch. 5. Pt. A. Because a decision on this issue would have absolutely no impact on Mr. Torres' sentence, we leave the resolution of the question for another day.[2]

REVERSED and REMANDED.

---

[2]Apparently, this court has never addressed this second issue raised by Mr. Torres. Even so, the lack of Tenth Circuit authority on the subject is no reason to abandon principles of judicial restraint and render an opinion that is unnecessary and meaningless as applied to the defendant in this case. Consequently, we reserve judgment on the matter until such time as a decision will actually affect a defendant's sentence. Perhaps in the meantime, the Sentencing Commission will see fit to further clarify the Guidelines as they pertain to this issue.