**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

THEODORE ANTHONY ABEYTA,

    Defendant - Appellant.

No. 04-8068
(D. Wyoming)
(D.Ct. No. 03-CR-98-D)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **O'BRIEN**, and **TYMKOVICH**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Theodore Abeyta was indicted for being a felon in possession of firearms and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Pursuant

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

to a plea agreement, he pled guilty to being a felon in possession of firearms and was sentenced to thirty-three months imprisonment. On appeal, Abeyta claims the district court improperly calculated his criminal history category. In supplemental briefing, he also claims his sentence violates the recent Supreme Court holding in *United States v. Booker*, - - U.S. - -, 125 S.Ct. 738 (2005). Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we AFFIRM.

## I.    Background

The events leading to Abeyta's arrest are not contested. On the evening of March 14, 2003, while driving with two friends, Abeyta's truck broke down on the side of a Wyoming highway. The three men responded by removing two .22 caliber rifles from the bed of the truck and wrapping them in a tarp, then hitching a ride to a convenience store to call for assistance. While neither Abeyta nor his friends were acting in a threatening manner in the store, the police were summoned because the weapons made people in the store nervous. When the officers arrived and questioned one of Abeyta's friends about the rifles, he explained that their truck had broken down on the highway and the three companions had brought the firearms with them because they did not want to leave them in the back of the truck.

An unremarkable investigation led to the discoveries that Abeyta was the driver of the truck; he was driving under the influence of alcohol; his license was

suspended; he did not have a valid registration; he was in possession of a small amount of marijuana; and he was wearing a concealed .25 caliber semi-automatic pistol. He was charged by Wyoming authorities for the foregoing offenses. Three days later, he pled guilty and was sentenced to a total of 180 days in jail.[1]

On May 22, 2003, Abeyta was charged in a federal indictment with, *inter alia*, being a felon in possession of firearms[2] based on his possession of the firearms on March 14, 2003. He eventually pled guilty and a presentence investigation report (PSR) was prepared.[3] In calculating Abeyta's offense level, the PSR found a base offense level of 14 and added two points for possession of between three and seven firearms pursuant to USSG §2K2.1(b)(1)(A). His criminal history category included two points for his convictions for the March 14, 2003, possession of marijuana and driving under the influence of alcohol (DUI) offenses. The report also added two points pursuant to USSG §4A1.1(d) because the March 14, 2003, arrest occurred while there was an outstanding warrant from a prior sentence. The total sixteen point criminal history calculation

---

[1]Abeyta was sentenced as follows: driving under the influence of alcohol (90 days in jail); possession of marijuana (30 days in jail); carrying a concealed weapon (60 days in jail); driving with a suspended license (6 months unsupervised probation); no valid registration ($30.00 fine).

[2]Abeyta pleaded guilty in Utah to possession of a controlled substance, a third degree felony, in 1993.

[3]Abeyta was sentenced under the November 5, 2003 edition of the Sentencing Guidelines Manual.

established a criminal history category of V. Based on a total offense level of 13[4] and a criminal history category of V, the guideline imprisonment range was thirty to thirty-seven months.

At the hearing, Abeyta lodged an objection to the inclusion of the marijuana and DUI convictions in his criminal history calculation, claiming the sentences were related to his sentence for carrying a concealed weapon and therefore must be considered "relevant conduct" within the meaning of USSG §1B1.3(a)(1), precluding their use in determining his criminal history category. After further discussion, the district court deferred Abeyta's sentencing to allow the parties to brief the issue. Following the submission of the parties' briefs, the sentencing hearing recommenced on June 18, 2004. The district court overruled Abeyta's objections and sentenced him to thirty-three months imprisonment followed by two years of supervised release. This timely appeal followed.

## II. Standard of Review

The district court's legal interpretation of the sentencing guidelines is reviewed de novo, while its factual findings are reviewed for clear error. *United States v. Keifer*, 198 F.3d 798, 801 (10th Cir. 1999). Whether prior conduct constitutes relevant conduct under USSG §1B1.3 is a question of fact for the

---

[4] Abeyta received a three point reduction for acceptance of responsibility. *See* USSG §3E1.1(a) & (b).

district court's determination. *Id.* So too, "[a] challenge to the district court's determination of whether [] prior offenses were part of the instant offense is a factual determination" reviewed for clear error. *United States v. Torres*, 182 F.3d 1156, 1159 (10th Cir. 1999).

Abeyta challenges the district court's decision to assess two criminal history points against him based on the state court convictions for DUI and marijuana possession. He agrees his concealed weapon charge is relevant conduct under USSG §1B1.3. However, he argues that once the district court determined the concealed weapon charge was relevant conduct to the instant offense, USSG §4A1.2(a)(2) and application note 3 to that section foreclosed the use of his related sentences for DUI and marijuana possession in his criminal history calculation. We disagree.

## III. Discussion

### A. Prior Sentences

In calculating a defendant's criminal history category under the guidelines, points are added based upon prior sentences. "The term 'prior sentence' means any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of *nolo contendere, for conduct not part of the instant offense.*" USSG §4A1.2(a)(1) (emphasis added). The commentary accompanying §4A1.2 provides that "[c]onduct that is part of the instant offense means conduct that is

relevant conduct to the instant offense under the provisions of §1B1.3 (Relevant Conduct)." USSG §4A1.2, comment. (n.1). Thus, by definition, a "prior sentence" for the purposes of a criminal history calculation excludes a sentence for conduct that is relevant conduct under §1B1.3.

Under §4A1.2(a)(2), "[p]rior sentences imposed in unrelated cases are to be counted separately. Prior sentences imposed in related cases are to be treated as one sentence for purposes of §4A1.1(a), (b), and (c) [calculation of criminal history category]." The guidelines consider prior sentences to be related "if they resulted from offenses that (A) occurred on the same occasion, (B) were part of a single common scheme or plan, or (C) were consolidated for trial or sentencing." USSG §4A1.2, comment. (n.3). Abeyta argues that his convictions for DUI, marijuana possession and carrying a concealed weapon (as well as his uncounted motor vehicle transgressions) occurred on the same occasion, were part of the same activity and were consolidated for sentencing. Therefore, if the concealed weapon charge is considered relevant conduct, then the remainder of his related sentences become one sentence and must also be treated as relevant conduct and may not be considered in determining his criminal history category.

Abeyta argues that our analysis in *Torres* supports his position. In *Torres*, we clarified how we review the district court's determination whether a prior sentence is based on conduct relevant to the instant offense:

> [W]e must first examine whether the district court took the prior sentence into account in determining the base offense level. If the district court did take the prior sentence into account in calculating the offense level, then it is clear that to prevent double counting the court cannot use that same sentence in its criminal history calculation. However, in a case like this one, where the record shows that the court did not take the prior sentence into account for its base offense level calculation but instead used it for criminal history purposes, a second step of analysis is necessary. We also must review the court's underlying finding that the prior sentence was not part of the instant offense, i.e., that it was not relevant conduct. A correct determination of whether the prior sentence constituted relevant conduct is an essential predicate to the criminal history assessment.

182 F.3d at 1160 (citations omitted). Courts generally look to "the similarity, temporal proximity, and regularity of the instant offense and the prior sentence" when determining whether the prior sentence is based on conduct relevant to the instant offense. *Id.* This includes an analysis of the nature and substance of the offense(s) underlying the prior sentence as compared to the instant offense, whether the prior offense was consolidated with the instant offense and whether the government intended to present evidence of the prior conviction. *Id.*

Applying *Torres*, we have no difficulty agreeing with the district court that the conduct involved in the state concealed weapons charge is relevant conduct to the offense of being a felon in possession of a firearm. The two offenses occurred at the same time and the concealed weapon was considered as one of the weapons included in the federal charge. We also agree that the marijuana possession and the DUI have no similarity with the "nature and substance" of the

instant offense. As the district court noted, these are "severable instances of unlawful conduct." *United States v. Banashefski*, 928 F.2d 349, 352 (10th Cir. 1991);[5] *see also, United States v. Flores*, 149 F.3d 1272, 1281 (10th Cir. 1998) (state marijuana possession charge not relevant conduct to federal methamphetamine conspiracy charge); *Kiefer*, 198 F.3d at 801-802 (state conviction for fraudulently obtaining driver's license not relevant conduct to federal bank fraud conviction); *United States v. Ladum*, 141 F.3d 1328, 1347-48 (9th Cir. 1998) (local ordinance violation for operation of second-hand store not relevant conduct to federal fraud and money laundering convictions); *United States v. Troncoso*, 23 F.3d 612, 616-17 (1st Cir. 1994) (state court cocaine distribution conviction not relevant conduct to federal immigration charge).

As in the above cases, Abeyta's convictions for DUI and marijuana

---

[5]Contrary to Abeyta's position, neither *Torres* nor any other Tenth Circuit case has "implicitly overruled" our holding in *Banashefski*. In *United States v. Ivy*, 83 F.3d 1266, 1295 (10th Cir. 1996), we noted the 1993 amendment by the Sentencing Commission to USSG §4A1.2, comment. (n.1), which added the following: "Conduct that is part of the instant offense means conduct that is relevant conduct to the instant offense under the provisions of §1B1.3 (Relevant Conduct)." USSG App. C, amend. 493. We also recognized that "[t]he purpose of the amendment was to avoid double counting and ensure consistency with other guideline provisions." *Id.* (internal quotation marks omitted). Prior to the amendment, our standard in *Banashefski* held that prior offenses were part of the instant offense, if they were not "severable instances of unlawful conduct." 928 F.2d at 352. While the amendment placed that standard in a broader legal context, as later defined by *Torres*, our reasoning in *Banashefski* is entirely compatible with subsequent cases determining whether a state conviction is relevant conduct vis-a-vis a federal conviction.

possession were collaterally connected to his federal firearms charge only because of the temporal proximity of their discovery. He astutely refrains from arguing that the DUI and marijuana charge would independently be considered relevant conduct in this case absent the existence of §4A1.2(a)(2). Indeed, his point is that his sentences for the marijuana conviction and the DUI are subsumed within his concealed weapon sentence by virtue of § 4A1.2(a)(2). Thus, in Abeyta's view, the district court improperly "unrelated" the concealed weapons sentence before applying the sentences for DUI and marijuana possession. Or, as the first circuit framed the issue before rejecting it in a similar case, "a court confronted with a group of prior related sentences must designate them relevant or irrelevant conduct as a group." *United States v. Cyr*, 337 F.3d 96, 102 (1st Cir. 2003) (separating relevant conduct from prior related cases).

While Abeyta's argument has superficial appeal, his logic is flawed. "We interpret the Sentencing Guidelines according to accepted rules of statutory construction. In interpreting a guideline, we look at the language in the guideline itself, as well as at the interpretative and explanatory commentary to the guideline provided by the Sentencing Commission." *United States v. Robertson,* 350 F.3d 1109, 1112 (10th Cir. 2003), *cert. denied*, 541 U.S. 1052 (2004) (internal quotations and citation omitted). Abeyta wishes us to begin with the guidelines commentary in our analysis. However, we begin with the first section of the

guideline itself. *See* USSG §4A1.2(a)(1). Under the plain language found therein, his concealed weapon conviction is conduct that is part of the instant offense, and therefore, by definition his sentence for that conviction is not a "prior sentence." If it is not a "prior sentence," then it cannot be a "prior sentence" imposed in a related case or a related "prior sentence." *See* §4A1.2(a)(2) and comment. (n.3).

As we stated in *Torres*, "[a] correct determination of whether the prior sentence constituted relevant conduct is an essential *predicate* to the criminal history assessment." 182 F.3d at 1160 (emphasis added). Again, in *Keifer* we confirmed, "a conviction *will not be treated as a prior sentence* (and no criminal history points can be added) so long as the underlying conduct meets the definition of relevant conduct." 198 F.3d at 801 (emphasis added).

The district court's approach was a straightforward application of the guidelines. It determined that the sentence resulting from Abeyta's conviction for a charge constituting relevant conduct to the instant offense was not a "prior sentence" for the purpose of calculating his criminal history category. Pursuant to *Torres*, the court appropriately considered the concealed weapon charge in determining Abeyta's offense level. The next step was to determine whether the remaining sentences should be considered "prior sentences." It did so, and concluded that the marijuana possession and DUI sentences did not include

conduct "part of the instant offense." USSG §4A1.2(a)(1). The court then determined that these prior sentences were related[6] and, accordingly, it combined their effect to impose two additional criminal history points. The district court appropriately applied the sentencing guidelines to determine Abeyta's criminal history category.

B.    *Booker* Claim

On January 12, 2005, the Supreme Court issued its opinion in *Booker*. After *Booker* was issued, Abeyta requested leave to file a supplemental brief in support of his pending appeal. We granted his request and now address his claim that his sentence violates the principles set forth in *Booker* because the district court applied the sentencing guidelines in a mandatory fashion.

In *Booker*, the Supreme Court held that the Sixth Amendment requires "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict [to] be admitted by the defendant or proved to a jury beyond a reasonable doubt." 125 S.Ct. at 756. To remedy the constitutional infirmity of the guidelines, *Booker* invalidated their mandatory nature, requiring the district court to consult them as advisory. *Id.* at 756-57 (severing and

_____

[6]The Government concedes that the sentences for all but the concealed weapon charge are prior sentences in related cases.

excising 18 U.S.C. §§ 3553(b)(1), 3742(e)).

Because Abeyta did not raise *Booker* before the district court, we review for plain error. *United States v. Gonzalez-Huerta*, 403 F.3d 727, 730 (10th Cir. 2005) (en banc). To establish plain error, he must demonstrate there is (1) error, (2) that is plain and (3) the error affects his substantial rights. *United States v. Dazey*, 403 F.3d 1147, 1174 (10th Cir. 2005); *Gonzalez-Huerta*, 403 F.3d at 732. If these three prongs are met, we may exercise our discretion to correct the error if Abeyta establishes "the error seriously affects the fairness, integrity, or public reputation of judicial proceedings," i.e. the fourth prong of plain error review. *Dazey*, 403 F.3d at 1174. *See* Gonzalez-Huerta, 403 F.3d at 736.

The first two prongs of the plain error standard have been met—there was error and the error was plain. *Gonzalez-Huerta*, 403 F.3d at 732. However, contrary to Abeyta's arguments, the error was not a structural error. *Id*. at 734. It is a "non-constitutional *Booker* error" because no judicial fact-finding occurred at sentencing but the district court applied the guidelines in a mandatory rather than advisory fashion. *Id.* at 731-32. Abeyta does not claim the district court engaged in fact-finding. Therefore, his sentence was based solely on his admissions and no Sixth Amendment violation occurred.

We need not decide whether Abeyta has satisfied the third prong of the plain error standard because, even if he has, he has not met the fourth prong. *See*

-12-

*id.* at 736 (concluding it was unnecessary to determine whether the third prong of the plain error test was met because the fourth prong must also be satisfied to obtain relief and the fourth prong was not met).

If "non-constitutional *Booker* error" is involved, as in this case, the standard for satisfying the fourth prong of the plain error test is "demanding"—the defendant must show that the error is "particularly egregious" and that our failure to notice it would result in a "miscarriage of justice." *Dazey*, 403 F.3d at 1178 (internal quotations omitted); *Gonzalez-Huerta*, 403 F.3d at 736-37 (internal quotations omitted). We have recognized that in most cases involving "non-constitutional *Booker* error" the defendant will be unable to satisfy the fourth prong. *See Trujillo-Terrazas*, 405 F.3d 814, 820-21 (10th Cir. 2005) (recognizing the difficulty in establishing the fourth prong in cases involving "non-constitutional *Booker* error" but finding that defendant had satisfied the fourth prong). Like the majority of others, Abeyta has not met this demanding standard.

Abeyta received a sentence within the national norm as established by the guidelines. *See Gonzalez-Huerta*, 403 F.3d at 738-39 (considering in fourth prong analysis whether the defendant received a sentence within the guidelines/national norm and the record supported a lower sentence). There is nothing in the record to indicate the court was unhappy with Abeyta's sentence or

-13-

that it would have been inclined to impose a lower sentence or probation had it realized it enjoyed the discretion to do so. Based on the above, Abeyta fails to satisfy the fourth prong of plain error review. Accordingly, we decline to exercise our discretion to correct the *Booker* error.

## IV. Conclusion

For the above-stated reasons, we AFFIRM the sentence imposed by the district court.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge